UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OWEN MASON,<br>     Plaintiff, | :<br>:<br>: |
| v. | :     No. 3:21-cv-1088 (MPS) |
| | : |
| CONNECTICUT DEPARTMENT OF<br>CORRECTION, et al.,<br>     Defendants. | :<br>:<br>: |

## INITIAL REVIEW ORDER

The plaintiff, Owen Mason, is an unsentenced[1] *pro se* inmate incarcerated within the Connecticut Department of Correction. He has filed a complaint under 42 U.S.C. § 1983 and paid the filing fee for his case. Mason's verified complaint asserts Eighth Amendment violations against the Connecticut Department of Correction ("DOC"),[2] Officer John Locke, Lieutenant Hollister, Correctional Nurse "Bob," and Officer Aliciea.[3] Compl., ECF No. 1. Mason seeks damages, an injunctive order, and a declaratory judgment. *Id.* at p. 13.

---

[1] The Court may "take judicial notice of relevant matters of public record. *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).The Connecticut DOC website shows that Mason is an unsentenced inmate who is currently housed at Cheshire Correctional Institution. http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=327288.

[2] Mason may not proceed under section 1983 against the DOC, which is a state agency and not a person within the meaning of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("governmental entities," like state agencies, "that are considered arms of the State," are not persons within meaning of 42 U.S.C. § 1983) (internal quotation marks and citation omitted).

[3] The Court will not review Mason's state law claims of assault and battery and intentional and negligent infliction of emotional distress now because this review for purposes of 28 U.S.C. § 1915A is limited to federal law claims. That is because the core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to dismiss or motion for summary judgment. More

### I. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic*, 550 U.S. at 556).

Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

### II. ALLEGATIONS

The Court considers all of Mason's allegations in his complaint to be true for purposes of initial review.

---

generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the Court has overlooked a controlling legal principle or if there are additional facts that would warrant dismissal of a claim.

At the time relevant to the allegations of the complaint, Mason was housed at Northern Correctional Institution. Compl. at ¶ 2 (Statement of Facts).

On January 18, 2020, Mason was scheduled for a shower. *Id.* at ¶ 3. Officer Locke instructed Mason to get prepared for his shower and then to turn his back to his cell door in order to be placed in mechanical restraints prior to the door opening. *Id.* at ¶ 4. Mason was then handcuffed behind his back and ankle shackled without incident. *Id.* at ¶¶ 6-7. Officer Locke directed him to use a shower that was commonly known to be broken. *Id.* at ¶¶ 9-10. Mason informed Locke that the shower was broken, but Locke only responded with a racial epithet and told him he would go where "the F**k I tell you to go!" *Id.* at ¶ 11. Mason, who was in restraints, felt threatened and asked to go back to his cell. *Id.* at ¶ 12.

After he returned to his cell, Locke commenced removal of Mason's restraints; Mason told Locke that he should not force inmates into a broken shower as he was not a regular block officer. *Id.* at ¶ 13. Officer Locke cursed at Mason, grabbed him by the restraints, dragged him out of the cell, spun him around violently, and smashed his head into the steel wall/window frame directly in front of the cell. *Id.* at ¶ 14. Mason lost consciousness when his head hit the steel. *Id.* at ¶ 15. When he came to his senses, Mason felt significant pain in his head and a searing pain radiating down his neck into his back. *Id.* Officer Mercado ran to assist Officer Locke, but she refused to make the Code Orange call requested by Officer Locke after witnessing Locke "tossing" Mason while he was fully restrained. *Id.* at ¶ 16. Instead, Officer Mercado called a Signal Eleven to indicate the need for a supervisor. *Id.*

Lieutenant Hollister, who responded to the Signal Eleven, authorized the placement of Mason in a strip cell on in-cell restraints. *Id.* at ¶ 17. Lieutenant Hollister supervised Officer

Aliciea, who placed Mason into in-cell restraints with tight handcuffs to the point of injury and short-chaining (where the tether chain connecting the inmate's handcuff chain to the shackle chain is too short for the inmate to fully stand up, thereby leaving the inmate in a painful position for the duration of the restraint period). *Id.* at ¶¶ 20, 21. Mason informed Aliciea and Hollister that he was in pain from the tight cuffs and that the tether was too short, but they left him to suffer for more than thirteen hours. *Id.* at ¶¶ 22-23. Aliciea stated that he should not assault staff. *Id.*

After being placed on in-cell restraints, Correctional Nurse "Bob" came into the Mason's cell to check his restraints. *Id.* at ¶ 24. At that time, Mason informed Nurse Bob about the tightness of his restraints. *Id.* During Nurse Bob's review of the restraints, it was apparent that the cuffs had already cut into Mason's wrists and that both of his hands had started to swell. *Id.* Nurse Bob signed off on the restraints and advised Mason to sit still. *Id.* at ¶ 25.

During his placement on in-cell restraints, Mason's head throbbed from pain; his tight restraints caused his wrists to bleed and hands to swell; and his multiple requests for medical attention went ignored. *Id.* at ¶ 32.

In the late afternoon, Mason was served with a disciplinary report, in which Officer Locke charged him with attempting to assault him while Mason was in full restraints. *Id.* at ¶ 27. Officer Locke had fabricated the charges to justify his own assault on Mason. *Id.* at ¶ 27.

At 8:05 PM, Nurse Bob returned to Mason's cell. *Id.* at ¶ 34. Mason showed him his bloody wrists; swollen, purple hands; and swollen knot on his forehead. *Id.* Mason requested medical assistance, but Nurse Bob told Mason that he would be fine and walked away. *Id.*

Mason spent the night of January 18 into the next morning of January 19, 2020, squatting

or lying in the fetal position due to the position of the chains; Mason was in pain and unable to sleep, but staff who passed by his cell every fifteen minutes refused to provide him with any assistance. *Id.* at ¶ 35. Mason's leg, back, shoulder, neck and body cramped as he was unable to stretch, flex or straighten; he could only lie on the floor of a cold, dark cell at Northern while he experienced the worst pain of his entire life. *Id.* at ¶ 42.

During the morning of January 19, Lieutenant Tuddle noticed Mason's swollen, purple hands and wrists covered with dried blood and immediately loosened the restraints. *Id.* at ¶ 36. He indicated that he would instruct medical staff to check Mason, but no medical staff person ever arrived. *Id.*

Lieutenant Melendez later observed that Mason's hands were continuing to swell and remained purple. *Id.* at ¶ 36. He also loosened the handcuffs; due to the injury from the short-chaining, Mason's hands continued to swell. *Id.* at ¶ 37.

Mason remained in in-cell status until approximately 5:00 PM on January 19, 2020; the DOC restraint checklist indicated that Mason had acted with compliance for the entire time. *Id.* at ¶ 38.

Following an investigation and hearing, the disciplinary charges were dismissed by DOC with a finding that the evidence did not support Officer Locke's version of the events. *Id.* at ¶ 30.

The Court takes judicial notice of State of Connecticut DOC Administrative Directive 6.5, titled Use of Force, which provides that a correctional staff member is permitted to use physical force to maintain discipline, order, safety and security and to use physical force "and/or apply restraints when an inmate's behavior constitutes an immediate threat to self, others, property, order or the safety and security of the facility." Admin. Dir. 6.5(4)(a) & (d); 6.5(5)(a)(i)

& (ii).[4] Administrative Directive 6.5(3)(f) defines "In Cell Restraint" as: "Restraint within a cell of an acutely disruptive inmate utilizing one or more of the following restraining devices as appropriate: handcuffs, leg irons, security (tether) chain, belly chains, flex cuffs and/or black box." Admin. Dir. 6.5(3)(f).

### III.   DISCUSSION

Mason alleges Eighth Amendment claims against Officer Locke, Lieutenant Hollister, Nurse Bob, and Officer Aliciea. Because Mason appears to have been a pretrial detainee at the time of the incidents set forth in the complaint, the Fourteenth Amendment's substantive due process guarantee rather than the Eighth Amendment's prohibition against cruel and unusual punishment is applicable to each of these claims. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2017) (holding that claims pertaining to the conditions of a pretrial detainee's confinement in a state prison facility should be evaluated under the Fourteenth Amendment's Due Process Clause because "[a] [p]retrial detainee[ ] ha[s] not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise."). Accordingly, the claims asserted under the Eighth Amendment are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Thus, the Court must consider whether Mason has stated plausible Fourteenth Amendment claims against each defendant. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). In *Tangreti v. Bachmann*, the Second Circuit clarified the pleading standard applicable to supervisory defendants in cases concerning

---

[4] Administrative Directive 6.5, effective as of October 1, 2018, may be found on the State of Connecticut Department of Correction website at https://portal.ct.gov/DOC/AD/AD-Chapter-6 (last visited December 13, 2021).

alleged violations of constitutional rights. Joining other Courts of Appeals that have addressed the issue, the Second Circuit held that "after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.' ... The violation must be established against the supervisory official *directly*." *Tangreti*, 983 F.3d 609, 618 (2d Cir. 2020) (emphasis added) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

### A. Excessive Force

In *Kingsley v. Hendrickson,* 596 U.S. 389 (2015), the Supreme Court held that in deciding whether the force used by a prison official against a pretrial detainee was excessive under the Fourteenth Amendment, "courts must use an objective standard" rather than "a subjective standard that takes into account [the prison official's] state of mind." *Id.* at 394-95. To state an excessive force claim against a prison official, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396-97. The determination of reasonableness must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time...." *Id.* at 397. Various considerations "may bear on the reasonableness or unreasonableness of the force used[,]" including the "relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting," among others. *Id.*

Officers are liable not only when they use excessive force themselves, but also when they fail to intervene to stop the excessive use of force by another officer when in a position to

observe the conduct and with time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019).

### Officer Locke

Mason's allegations that Officer Locke violently assaulted him by smashing his head against a steel wall/window frame and tossing him around while fully restrained in response to Mason's verbal statements are sufficient to state a plausible claim that the force used by Officer Locke was objectively unreasonable. The Court will permit Mason's Fourteenth Amendment claim of excessive force claim to proceed against Officer Locke in his individual capacity for damages.

### Lieutenant Hollister and Officer Aliciea

Mason alleges that Lieutenant Hollister and Officer Aliciea inflicted pain and suffering through the use of excessively tight cuffs and short-chaining him. He alleges further that tight cuffs resulted in his suffering permanent nerve damage.

The Second Circuit has recognized that the application of excessively tight handcuffs or restraints "in excess of what was necessary under the circumstances" may rise to the level of a constitutional excessive force violation. *See Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994). The key inquiry is "whether the alleged conduct involved unnecessary and wanton infliction of pain." *Gawlik v. Semple*, No. 3:20-CV-564(SRU), 2021 WL 4430601, at *10 (D. Conn. Sept. 27, 2021) (quoting *Davidson*, 32 F.3d at 30).

Mason's complaint alleges that that Lieutenant Hollister responded to a scene where Mason was already in full restraints (although accused of assaulting Officer Locke). He alleges further that Officer Aliciea repeatedly answered his complaints about the tight restraints and

short tether with "don't assault staff." Construed liberally, Mason's allegations raise an inference that Mason did not pose a threat to safety or security and that the extremely tight restraints and short tether were applied to cause him pain rather than for legitimate penological reasons. Accordingly, Mason has stated a plausible claim that the use of short-chained, in-cell restraints was objectively unreasonable. The Court will permit Mason's Fourteenth Amendment claims of excessive force based on the use of in-cell restraints to proceed beyond initial review against Lieutenant Hollister and Officer Aliciea.[5]

### B.  Conditions of Confinement

The Court also considers whether Mason has alleged a claim of deliberate indifference to his conditions of confinement. There are two prongs to a Fourteenth Amendment deliberate indifference claim involving the conditions of confinement of a pretrial detainee. *See Darnell*, 849 F.3d at 29. Under the first prong, a detainee must allege that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health ... which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks and citations omitted). A district court evaluates the conditions to which the detainee was exposed in the context of contemporary standards of decency and addresses, *inter alia*, whether the detainee has been deprived of basic human needs including, for example, food, clothing, shelter, medical care, and reasonable safety, or has been subjected to an unreasonable risk of serious harm to his or her future health. *Id.* (internal quotation marks and citations omitted).

The second prong, also called the "*mens rea*" or state of mind prong, of the "deliberate indifference [standard] is defined objectively." *Id.* at 35. Thus, "the Due Process Clause can be

---

[5] At this initial stage in the proceeding, Mason's claim against Lieutenant Hollister may proceed on the basis of Hollister's failure to intervene to prevent the tight handcuffing and his direct involvement with placing Mason in short-chained in-cell restraints.

violated when an official does not have subjective awareness that the official's acts (or omissions) have" created a condition that poses "a substantial risk of harm" to a detainee. *Id.* To meet the second prong of a Fourteenth Amendment conditions claim, a detainee must allege that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [the detainee] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* Mere negligent conduct by a prison official does not satisfy the second prong of the Fourteenth Amendment standard. *Id.* at 36.

Mason has sufficiently established the objective element for purposes of initial review by alleging that the tight cuffs and short-chained in-cell restraints caused him extreme pain over an extended period of time and sleep deprivation. Although Mason allegedly alerted both Lieutenant Hollister and Officer Aliciea that his cuffs were too tight and tether too short, they nevertheless acted with indifference to the risk of harm posed by leaving Mason in a painful stressful position with extremely tight restraints and short tether that ultimately had to be loosened on two separate occasions by Lieutenants Tuddle and Melendez. Accordingly, the Court will permit Mason to proceed on his Fourteenth Amendment claims against Lieutenant Hollister and Officer Aliciea in their individual capacities based on their alleged indifference to the serious risk of harm posed by leaving Mason short-chained with extremely tight handcuffs.

### C.      Medical Indifference

Mason alleges that Nurse Bob ignored the misuse of the in-cell restraints and his requests for medical attention for his bloody wrists, swollen hands, and swollen knot on his forehead.

The Fourteenth Amendment standard set forth in *Darnell* applies also to a pretrial

detainee's claims involving a denial or delay in the provision of medical treatment to a pretrial detainee. *See, e.g., Roice v. Cty. of Fulton*, 803 F. App'x 429, 430, 432 (2d Cir. 2020) (summary order) (applying *Darnell's* Fourteenth Amendment standard to pretrial detainee's claim that prison medical providers failed to promptly treat his complaints of abdominal pain and nausea). Again, the Court must consider objective and *mens rea* elements. Under the first prong, a detainee must allege that his or her medical need or condition was "a serious one." *Brock v Wright*, 315 F.3d 158, 162 (2d Cir. 2003). A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that can cause death, degeneration, or extreme or chronic pain. *Id.* at 162-63. Relevant to the *mens rea* element, deliberate indifference can include indifference "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 105 (1976).

Mason sufficiently alleges that he was exposed to an objectively serious risk of harm to his health as a result of being placed on the short-chained in-cell restraints with the extremely tight cuffs. Nurse Bob allegedly "signed off" on the in-cell restraints although he heard Mason's complaints and could observe that the handcuffs had cut into Mason's wrists and caused swelling after only a short period of time; and he allegedly failed to assist Mason after he observed that the cuffs continued to cause Mason's wrists to bleed, swell and turn purple when he later visited Mason in the evening. For purposes of initial review, these allegations are sufficient to suggest that Nurse Bob acted with indifference to a substantial risk of serious harm to Mason's health and well-being posed by his tight cuffs and short-chained in-cell restraints. The Court will permit this Fourteenth Amendment claim to proceed against Nurse Bob in his individual capacity.

Mason has also alleged that Nurse Bob ignored his request for medical treatment although Mason had a noticeable knot on his head caused by the alleged assault by Officer Locke. He alleges further that he still has a knot on his head and now suffers from headaches. For purposes of initial review only, the Court assumes that Mason has alleged a sufficiently serious medical condition that was knowingly ignored by Nurse Bob. The Court will permit this claim to proceed against Nurse Bob for further development.

### D. Official Capacity Claims

Mason sues the State of Connecticut in its official capacity, while suing all individual defendants in their individual capacities. ECF No. 1 at 2. He seeks various injunctive and declaratory relief against the State. *Id.* at 13. As noted (see note 2, *supra*), Mason may not sue the State of Connecticut under section 1983. Indeed, the Eleventh Amendment bars all claims against the State in federal court, unless the State has waived its immunity or Congress has abrogated it for a specific type of claim – neither of which applies here. Thus, Mason's claims against the State for injunctive and declaratory relief are dismissed. Mason could not seek prospective relief against the individual defendants either, because he fails to allege any ongoing violations of federal law. *See Ex Parte Young*, 209 U.S. 123 (1908) (recognizing exception to Eleventh Amendment immunity against government officials sued in their official capacity to enjoin ongoing violations of federal law). Accordingly, Mason's claims for injunctive and declaratory relief are dismissed with prejudice.

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1) Mason's action may proceed on his Fourteenth Amendment excessive force claims

12

against Officer Locke, Lieutenant Hollister, and Officer Aliciea in their individual capacities; on his Fourteenth Amendment conditions claims against Lieutenant Hollister and Officer Aliciea in their individual capacities; and on his Fourteenth Amendment medical indifference claims against Nurse Bob in his individual capacity. Mason's state law claims may also proceed at this time.

All Eighth Amendment and official capacity claims are DISMISSED. The Connecticut DOC is DISMISSED from this action.

(2) Because Mason has paid the fee in this case, and he has not been granted *in forma pauperis* status, he is responsible for serving the complaint on the Defendants in their individual capacities within 90 days of the date of this order pursuant to Rule 4, Fed. R. Civ. P. If Mason has questions about service of the complaint, he may contact the Inmate Legal Aid Program ("ILAP"). Failure to effect service within the time specified may result in the dismissal of this action as to a defendant who has not been served.

The Clerk is directed to send Mason instructions for service of the complaint on the defendants in their individual capacities, together with one copy of the complaint, one copy of this order, four blank Notice of Lawsuit forms, and four blank Waiver of Service of Summons forms.

**(3) Mason shall effect service of the complaint on Defendants in their individual capacities by mailing a Notice of Lawsuit form, a Waiver of Service of Summons form, a copy of the complaint, and a copy of this order to each defendant. Mason shall file a notice with the Clerk indicating the date on which he mailed the Notice of Lawsuit and Waiver of Services of Summons forms to each Defendant in their individual capacity. He shall also**

**file the signed Waivers of Service of Summons forms that he receives from each Defendant in their individual capacity with the Clerk.**

(4) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

(6) The discovery deadline is **six months (180 days) from the date of this Order**. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which the Clerk must send to plaintiff with a copy of this Order. The order can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders. Note that discovery requests should not be filed with the Court. In the event of a dispute over discovery, the parties should make a good faith effort to resolve the dispute amongst themselves; then, the parties should file the appropriate motion to compel on the docket.

(7) All motions for summary judgment shall be filed within **seven months (210 days) from the date of this Order.**

(8) Pursuant to Local Rule 7(a), a nonmoving party must respond to a dispositive motion (i.e., a motion to dismiss or a motion for summary judgment) within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(9) If Mason changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the

dismissal of the case. Mason must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mason has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Mason should also notify the Defendants or defense counsel of his new address.

(10) Mason shall utilize the Prisoner E-Filing Program when filing documents with the Court. Mason is advised that the Program may be used only to file with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

_____/s/_____
Michael P. Shea
United States District Judge

It is so ordered this 3rd day of January 2022, at Hartford, Connecticut.